Law Library

FILED
SUPERIOR COURT
OF GUAM

2009 JUN -4 PM 3: 56

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| Attorney General of Guam, | ) | CIVIL CASE NO. CV0166-03 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **Findings of Fact and** |
| Carl T.C. Gutierrez; Davina M. Lujan; | ) | **Conclusions of Law** |
| Robert H. Kono; Phillip J. Tydingco; | ) | |
| Brooks Lynch Tydingco & Quan, LLP: | ) | |
| Vivien Baytoyan-Sagisi; and Does A-M, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter came before Judge *Pro Tempore* Richard H. Benson for trial on April 22 through April 30, 2009. Plaintiff was represented by Assistant Attorney General Benjamin M. Abrams. Defendant Davina Lujan was represented by Attorney Peter C. Perez and Delia S. Lujan. Defendant Gutierrez was represented by Attorney F. Randall Cunliffe. The other Defendants were dismissed in pretrial proceedings. Having listened and considered the testimony of the witnesses, received and examined the exhibits introduced into evidence, and duly considered the arguments of the attorneys, the court makes the following findings of fact and conclusions of law.

### BACKGROUND

This matter arises out of a complaint brought by the Plaintiff on February 21, 2003. In its complaint the Plaintiff asserts the court has jurisdiction over this matter pursuant to the authority designated to it in Section 1424(a) of Title 48 of the United States Code and the Guam Legislature's grant of original jurisdiction in Section 3105 of Title 7 of the Guam Code. *Compl.* at 2. The Plaintiff generally alleges that Defendants spent public money

illegally when they approved and signed a $300,000.00 settlement agreement with Dr. Vivien Batoyan and authorized the disbursement of these funds. *Id.* at 5 and 6. Subsequent to the filing of the complaint, pursuant to a motion for summary judgment, the court on November 26, 2004, limited Defendant Lujan's potential liability to $100,000.00.

## FINDINGS OF FACT[1]

1. After observing the demeanor, character, appearance and manner of responding of the witnesses who testified in this matter, the court makes the following determinations of credibility and specific findings of facts:

a) the court finds the testimony of Therese Hart was credible, truthful and honest. Specifically the court finds the following fact to be credible and true:

1) that she was assigned by Defendant Gutierrez to assist him with the administration of the hospital;

2) that she had the knowledge, experience and ability to recognize the handwriting, instructions, and intentions of Defendant Gutierrez conveyed to her by means of Post-it Notes;

3) that Defendant Gutierrez had the authority to act as the Administrator of the Guam Memorial Hospital (hereafter GMH) and mandate how the general funds of the hospital be spent;

4) that Defendant Gutierrez acted like the hospital administrator, was in charge of payroll and the payments to Dr. Batoyan, signed GMH checks, and was identified as the administrator on the hospital identification cards;

5) that Defendant Lujan inquired about whether the Defendant Gutierrez was going

[1] By reference the court incorporates into its findings of fact the Stipulation of Undisputed Facts signed by the parties and filed with the court on April 20, 2009.

to settle with Dr. Vivian Batoyan prior to Ms. Hart being instructed by the Defendant Gutierrez to pay Dr. Batoyan;[2]

6) that in December of 2000 Defendant Lujan discussed moving GMH's Risk Manager, Robert Soldier, to mental health because he had written a report about the Batoyan settlement; that Ms. Hart decided not to tell Soldier about the Batoyan settlement because she thought there was no need for him to know; and that she felt pressured to issue the third $100,000.00 check to Dr. Batoyan.[3]

b) The court finds the testimony asserted by John A. B. Pangelinan was truthful and honest. Specifically the court finds the following facts to be credible and true:

1) that between May 2000 and through the time after the last payment was made to Dr. Batoyan, he was employed as the comptroller for GMH;

2) that at the direction of Ms. Hart he prepared the payments to Dr. Batoyan;

3) that prior to issuing the third and final check he informed Josh Tenorio and Ms. Hart that he needed a copy of the settlement agreement;

4) that he felt pressured to release the third check;

5) that he was ostracized for giving Soldier copies of the payment vouchers and

---

[2] Defendant Lujan argued at trial that the parties had stipulated that she was not aware of the settlement agreement until after February 2001. However the stipulation signed by the parties provides,

The parties hereby submit this Stipulation of Undisputed Facts, as follows:
. . .
17. By February 2001, Defendant Davina M. Lujan had learned of a settlement reached with Dr. Batoyan.

*Stip.* at ¶17. Contrary to Defendant Lujan's argument the court finds that this stipulated fact does not limit testimony or a finding that she was aware of the settlement prior to February 2001.

[3] See fn 2.

checks for the first and second payments to Dr. Batoyan;

6) that after Soldier received the copies, Soldier was assigned to write grants without a desk, computer or grant writing software;

7) that Defendant Lujan was at times an irresponsible hospital administrator, spending more money than the hospital collected.

c) The court finds the following facts asserted by Patrick Mason to be credible and true:

1) that between October of 1999 and 2002 he was the Assistant Attorney General responsible for reviewing all government claims filed against the Government of Guam;

2) that during the above time period he did not review a claim filed by Vivien Batoyan.

d) The court finds the following facts asserted by Robert A. Soldier to be credible and true:

1) that GMH's rules and regulations required that the risk manager be made aware of any and all claims against the hospital;[4]

2) that Robert Soldier was GMH's risk manager prior to the time the first two $100,000.00 payments to Dr. Batoyan were made up until January 11, 2001, when his job duties were temporarily changed to grant writing;

3) that Mr. Soldier resumed his full duties as GMH risk manager on June 22, 2001;

4) that Mr. Soldier was not aware of any claim that had been filed by Vivien Batoyan, as described in §6101 et. seq. of the Government Claims Act;

---

[4] In addition to the court's finding of credibility this finding of fact is supported by the Hospital's regulations presented to the court in Exhibit 82 on page 328–32 of the numbered record exhibits introduced into evidence.

5) that the first two payments of $100,000.00 where made to Dr. Batoyan without his knowledge;

6) that in December of 2000 he informed Defendant Lujan and Therese Hart that the first two payments had been made to Dr. Batoyan without a government claim having been filed or a settlement agreement signed.

e) The court finds the following fact asserted by Aniceto Infante to be credible and true:

1) that he was employed at GMH;

2) that he was one of two people responsible for issuing GMH's checks;

3) that prior to issuing a check he was required to receive a payment voucher;

4) that prior to issuing the checks to Dr. Batoyan he received such a voucher;

5) that the Batoyan checks were prepared manually because the Governor was in a hurry to issue them;

6) that all three of the checks issued to Dr. Batoyan were affixed with the Defendant Gutierrez's stamped signature.

f) Specifically, the court finds that Defendant Gutierrez truthfully asserted that he approved the Batoyan settlement amount; directed that the matter be settled; and directed his subordinates to settle for $300,000.00. This defendant also authorized use of his signature on all payroll and vendor checks, and signed the Release and Settlement Agreement (Exhibit 47) that authorized final payment and ratified the two earlier payments of the settlement.

However the court finds that the general testimony of Defendant Gutierrez, as well as the majority of his specific factual assertions were untrue, not credible, unreasonable

and internally inconsistent.[5] The court finds the following assertions which were made by Defendant Gutierrez to be untrue and not credible:

1) that Defendant Gutierrez was not aware of the first two $100,000.00 payments which were made to Dr. Batoyan;

2) that Defendant Gutierrez as hospital administrator did not direct that the first two $100,000.00 payments be made to Dr. Batoyan;

3) that Defendant Gutierrez did not know why the checks went out;

4) that somebody made the checks without Defendant Gutierrez's knowledge or authorization;

5) that if Defendant Gutierrez had known about the checks he would have kept them from going out until a settlement agreement had been signed;

6) that Defendant Gutierrez did not know who determined the $300,000.00 settlement amount;

7) that Defendant Gutierrez did not know that the checks had been issued to Dr. Batoyan without a settlement agreement being signed or a claim being filed;

8) that Defendant Gutierrez was not aware that during the period between his signing an emergency order (taking over the hospital), and when Dr. Lujan was appointed as GMH's hospital administrator, that he was GMH's hospital administrator, with the ultimate authority to expend the funds of the hospital, including the emergency funds transferred to it by his order.

g) The court finds the following facts asserted by Defendant Lujan to be untrue and not

---

[5] The court's finding of credibility were based upon the court's observations of witness demeanor, responsiveness and character while testifying, as well as the reasonableness and internal consistency of their factual assertions.

credible:

1) that Defendant Lujan was not aware that the first two payments to Dr. Batoyan had been made without a government claim having been filed and without a signed settlement agreement;

2) that prior to her signing the $300,000.00 settlement agreement with Dr. Batoyan, she was not aware that a government claim had not been filed.

h) The court finds the following facts asserted by Robert Kono to be credible and true:

1) that he did not approve the Batoyan settlement for content and only reviewed it as to form.

## CONCLUSIONS OF LAW

In this case Plaintiff's complaint, on its face, contains four causes of action: 1) Defendants violated Section 7102 of Title 5 of the Guam Code; 2) that payments to Dr. Batoyan were made without any legal authorization 3) that Defendants violated GMH's standard operating procedures by not requiring Dr. Batoyan to file a claim form; and 4) that Defendants violated Section 6206 of Title 5 of the Guam Code by failing to receive the approval of the GMH Claims Officer. *Compl.* at 5 and 7.[6]

**I. First Cause of Action: Section 7102**

---

[6] In prior orders this court explained that Plaintiff's complaint contained three alleged causes of action. *Attorney General of Guam v. Carl T.C. Gutierrez*, Civil Case no 0166-03, Decision and Order on Motion for Summary Judgment, at 2 (April 9, 2009); *Attorney General of Guam v. Carl T.C. Gutierrez*, Civil Case no 0166-03, Decision and Order on Motion for Judgment on the Pleadings at 2 (April 9, 2009). Upon a closer review of Plaintiff's complaint the court finds that this delineation of Plaintiff's listed causes of action was clearly erroneous. Paragraph number 20 on page 5 of the complaint contains a cause of action which arises out of Section 7103 of Title 5 of the Guam Code; identified in paragraphs 3 and 5 of the Complaint. Therefore, having so found, the court, pursuant to *Hualde*, has included four causes of action in this analysis. *People of Guam v. Hualde*, 1999 Guam 3, ¶13 (Sup Ct. Guam 1999).

Plaintiff's first cause of action arises out of the mandates of Section 7102 of Title 5 of the Guam Code. It provides,

> Any officer, agent, contractor, or employee of the Executive Branch of the government of Guam who is charged with or assumes responsibility for the certification of availability of funds or the spending of money belonging to the territory of Guam, including the Governor and Lt. Governor of Guam, stands in a fiduciary relationship to the people of Guam in regard to the management of public money. Any such officer, agent, contractor, or employee of the Executive Branch shall discharge their duties with respect to the management of public money solely in the interest of the people of the territory of Guam. Any such officer, agent, contractor, or employee shall discharge his duties with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

5 Guam Code Ann. §7102 (2008). This section first requires that the evidence show that: 1) Defendants were officers or employees of the Executive Branch of the government of Guam and 2) that Defendants were charged with or assumed the responsibility of spending money belonging to the Territory of Guam.

The section on its face includes the Governor of Guam. The Plaintiff introduced credible testimony and exhibit evidence to show that Defendant Gutierrez was the Governor of Guam and the Hospital Administrator during the time period the first two payments were issued to Dr. Batoyan. It also introduced credible testimony and exhibit evidence: 1) that Defendant Gutierrez, as Governor and or Hospital Administrator, directed Therese Hart to pay Dr. Batoyan $300,000.00, before a government claim was filed or a settlement agreement signed; 2) that in his offices Defendant Gutierrez had the responsibility to expend hospital funds; 3) that during his tenure as acting GMH Hospital Administrator, pursuant to his instruction, Dr. Batoyan was paid $200,000.00; 4) that as to the final $100,000.00 payment Defendant Gutierrez assumed the responsibility of signing the settlement agreement; that had the governor not signed the settlement agreement the final $100,000.00

payment would not have been issued; 5) that when Defendant Gutierrez approved the settlement agreement it was an assumption of responsibility for the spending of money belonging to the Territory of Guam.

These findings are supported by the court's above findings of fact as well as exhibit: B-G and Exhibit 47 (Release and Settlement Agreement). Plaintiff introduced credible and true testimony that: 1) Defendant Lujan was the GMH Hospital Administrator prior to the issuance of the third settlement check, 2) that she was aware that no government claim had been filed; 3) that as Hospital Administrator she was responsible for spending GMH's money; 4) that she signed the settlement agreement on behalf of GMH as Hospital Administrator warranting that she "is duly authorized and empowered to execute the Agreement;"and 5) that she directed that the final payment be made. Ex. 47 at ¶10.

GMH was first designated as an autonomous corporation by the Guam Health Act of 1977. That Act designates Guam as a public corporation and autonomous instrumentality of the government of Guam. 10 Guam Code Ann. §80103 (2008). However, as explained by the 9th Circuit in 1980 in *Baldwin*, the Board is not completely autonomous and is subject to the Executive Branch. *Bordallo v. Baldwin*, 624 F.2d 932 (9th Cir. 1980)(the ninth circuit found that in the 1977 Health Act the legislature had inorganically interfered with the Governor's organic duties). Section 1421g(a) of the Organic Act plainly mandates that, ". . . the Governor shall establish, maintain, and operate public health services in Guam, including hospitals . . ." 48 U.S.C. §1421g(a) (2000). In this case, evidence of executive branch control over GMH was indicated by Defendant Gutierrez's Executive Orders assuming control of GMH. *Exhibits* B-G – H-G. Each of these seven orders asserts the Governor's control over GMH by citing the Governor of Guam's Organic Act authority. *Id.*

at 1.[7]

The funds generated or provided to GMH are public. They are tax exempt.[8] Section 80112 provides that GMH's self-generated funds shall commingled with money provided to it from the General Fund. *Id.* at §80112. In this case, evidence was introduced through the testimony of Defendant Gutierrez, Mr. Pangelinan, and Defendant Gutierrez's Exhibits, that Guam's General Fund monies were provided to GMH. *Exhibit* B-G at 2. Although no direct testimony established whether the source of the money was from GMH's self-generated funds or the government's general funds, it was undisputed the monies were drawn from the hospital's funds.[9]

Section 7102 next requires that officers or employees of the Executive Branch: 1) "discharge their duties with respect to the management of public money solely in the interest of the people of Guam;" and 2) "discharge his duties with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like

---

[7] The court finds it important to note in the alternative that whether GMH's activities fall outside of the scope of sections 7102 and 7103 was not raised by the Defendants' and is hereby waived.

[8] Section 80110 provides,
> As an instrumentality of the Territory, the hospital and all property acquired by or for the hospital, and all revenues and income therefrom are exempt from taxation by the Territory or by any political subdivision or public corporation thereof and from all taxes imposed under the authority of the Legislature of the Territory, or with respect to which the Legislature is authorized to grant exemption.

§80110 (1996).

[9] Like footnote number 7, the court finds that Defendants' failure to raise any argument at trial regarding the source of the funds, acts as a waiver.

character and with like aims." 5 Guam Code Ann. §7102 (2008). As set forth below the court finds that Defendants failed to prudently manage public money.

Specifically the court finds the expenditure was not solely in the interest of the people of Guam and was not authorized with the care, skill, prudence and diligence, of a similarly situated prudent person. Defendants should not have both directed Dr. Batoyan be paid the third $100,000.00 settlement payment: 1) absent a government claim's act claim having been filed and 2) in the face of the hospital's administrative appeals board having found prior to any payments being made that the hospital board of trustees' decision to suspend Dr. Batoyan's privileges was supported by the evidence and was not arbitrary or capricious. Defendant Gutierrez should not have directed that Dr. Batoyan be paid $300,000.00: 1) absent a signed settlement agreement 2) without having notified the GMH Risk Manager; and 3) in the face of the hospital administrative board's decision.

Guam's inherent sovereign immunity protects it, as a sovereign, from suit without its consent. *Limtiaco v. Guam Fire Dept.*, 2007 Guam 10, ¶33 (Guam Sup. Ct. 2007) citing, *Marx v. Government of Guam*, 866 F.2d 294, 298 (9th Cir.1989). Absent some specific legislative waiver Guam's sovereign immunity acts as jurisdictional bar on all actions brought against it. *Id.* Given this legal fact, at the outset the court finds that an Executive Branch official or employee, who uses public funds to settle a potential cause of action against the government of Guam, without some showing that the legislature has waived immunity for that action, does so imprudently and outside of the sole interest of Guam's citizens.

Defendant Gutierrez in this case presented no evidence that prior to authorizing the expenditure of GMH funds he raised or discussed the subject of Guam's governmental

immunity; that it was considered or briefed. Defendants in their testimony asserted that they relied upon the advice of legal counsel prior to directing that payment be made. However they failed to assert or introduce any evidence of what was discussed and why their reliance upon that advice was either reasonable or prudent. Absent some showing that Defendants were aware of and considered how Dr. Batoyan's potential causes of action were not barred by Guam's sovereign immunity the court is unable to find they complied with 5 GCA §7102.[10]

Guam's Government Claims Act located in Chapter 6 of Title 5 of the Guam Code applies to all causes of action brought against the Territory of Guam and specifically GMH. 5 Guam Code Ann. § 6102 (2008). The court finds that the Government Claims Act requires that prior to any waiver of immunity, a claim, as delineated by the act, be filed. 5 Guam Code Ann. §§ 6106(b), 6108 (2008).

> In order to determine whether a statute is ambiguous, the court examines the language of the statute and the structure of the law as a whole including its object and policy. The inquiry into whether a statute is ambiguous begins with looking at the plain meaning of the language in question, and, when looking at the language, the court's task is to determine if the language is plain and unambiguous. 'The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.' A statute's context includes looking at other provisions of the same statute and other related statutes.

*People v. Lau*, 2007 Guam 4 ¶ 14 (Guam Sup. Ct.Terr. 2007), quoting, *Aguon v. Gutierrez*, 2002 Guam 14 ¶ 6 (Guam Sup. Ct. 2002). Section 6108 of the Government Claims Act provides,

---

[10] Because Defendants affirmatively asserted that their reliance upon legal advice excused their imprudence, it was their burden to show that these issues were inquired about or discussed. Especially under the facts of this case, having opened the door Defendants are not allowed to rest upon a blank assertion of having obtained legal advice and being satisfied with it.

> This Chapter shall apply to all pending litigation in the courts of Guam, or which are on appeal, which were commenced without first filing an administrative claim as would be required by this Chapter had it applied at the time the suit was filed. If such pending litigation was timely filed under the laws existing at the time of filing, the plaintiffs may, notwithstanding § 6106 of this Chapter, file a claim under this Chapter, but such claims shall not be filed later than June 30, 1984, or not later than six months after the effective date of this Chapter, whichever is later.

5 Guam Code Ann. § 6108 (2008).

Section 6106(b) of the same act provides,

> (b) Every action filed under this Chapter shall be barred unless commenced within 18 months from the time the notice that the claim was rejected was served as provided in Article 2 of this Chapter, or within 24 months after the claim was filed in cases where the government does not reject the claim.

*Id.* at § 6106(b).

When taking into account Guam's sovereign immunity and the Act's limited waiver of it, as authorized by the Organic Act, the meaning, scope and intent of these statues is not ambiguous. 48 U.S.C.A § 1421a (2008). They clarify that the Act's waiver of immunity does not apply to a claimant who has not filed a government claim.

In addition to the court's finding above, it specifically finds that Defendants' payment of public funds to Dr. Batoyan, absent some discussion or consideration of her failure to file a Government Claim as defined by section 6103 of the Act, was not skillful, prudent, or diligent as analyzed from a similarly situated reasonable person standard. In this case specifically, GMH's actions had been administratively affirmed and no claim had been filed to begin the process of GMH's waiver of immunity. Given these facts and the lack of any justifiable reason to the contrary discussing immunity, it is outside the realm of reason to expend public money on a cause of action not yet actionable.

**II. Second Cause of Action: Section 7103**

Plaintiff's second cause of action is found in paragraph 20 of its complaint. It alleges that the first two $100,000.00, payments made to Dr. Batoyan, "were made wholly without legal authorization inasmuch as no claim, within the meaning of the Government Claims Act, had been filed by Defendant Batoyan against GMHA, nor had any other legal procedure which might avail Defendant Batoyan of monetary relief from GMHA been initiated by her." *Compl.* at 5. Likewise, Section 7103 of Title 5 of the Guam Code provides,

> Any taxpayer who is a resident of Guam shall have standing to sue the government of Guam and any officer, agent, contractor, or employee of the Executive Branch of the government of Guam for the purpose of enjoining any officer, agent, contractor, or employee of the Executive Branch of the government of Guam from expending money without proper appropriation, without proper authority, illegally, or contrary to law, and to obtain a personal judgment in the courts of Guam against such officers, agents, contractors, or employees of the government of Guam and in favor of the Government of Guam for the return to the Government of Guam of any money which has been expended without proper appropriation, without proper authority, illegally, or contrary to law. For purposes of this Chapter, the Governor and Lt. Governor of Guam are officers of the government of Guam, and are included within the scope of this Chapter.

5 GCA § 7103 (2008). As in the discussion of Section 7102, Plaintiff's allege Defendant Gutierrez's payments to Dr. Batoyan were without proper authority. To be held liable under the statute Plaintiff must prove by a preponderance of the evidence that Defendant was: 1) an officer of the Executive Branch; 2) that expended money; 3) without: a)proper appropriation; b) proper authority; c) illegally; or d) contrary to law.

A review of the court's findings of fact establish Defendant Gutierrez was Governor of Guam and acting Hospital Administrator when Dr. Bayton was issued two GMH checks for $100,000.00 each. As identified by the Organic Act, the Governor of Guam is an executive officer of the executive branch of Guam. 48 U.S.C. §1422 (2008). Furthermore as

Page 14 of 19

GMH Hospital Administrator, Defendant Gutierrez was either an agent or officer of the executive branch of Guam; within the scope of 7103. As explained above, GMH is ultimately subject, in existence and control, to the organic powers of executive branch. 48 U.S.C. §1421g(a) (2008). As such, its employees, officers and agents fall within the scope of Section 7102 and 7103, as employees officers and agents of the executive branch. Plaintiff presented direct and circumstantial evidence to support this finding: the testimony of Defendant Gutierrez, Therese Hart, Mr. Pangelinan and Exhibit B-G.

Defendant Gutierrez's expenditure of the two $100,000.00 payments to Dr. Batoyan was proven by the credible testimony of Therese Hart. His expenditure was contrary to the final disjunctive proscriptions of Section 7103 (contrary to law). The expenditures, without authority, abrogated Guam's sovereign immunity which under the Organic Act is specifically and uniquely a legislative function.

As explained above Guam's inherent sovereign immunity protects it, from suit without its consent. *Limtiaco v. Guam Fire Dept.*, 2007 Guam 10, ¶33 (Guam Sup. Ct. 2007) citing, *Marx v. Government of Guam*, 866 F.2d 294, 298 (9th Cir.1989). The organic act specifically ties Guam's immunity against suit to legislative consent. Absent some specific legislative waiver, Guam's sovereign immunity acts as a jurisdictional bar on all actions brought against it. *Id.* As to the facts asserted in this case, the court at the outset finds that the Defendants used public funds to settle a potential cause of action against the government of Guam. They did so without a legislative waiver of immunity, without proper authority, illegally, or contrary to law.

Defendant Gutierrez in this case argues that Guam's Government Claims Act, found in Chapter 6 of Title 5 of the Government Code, waives Guam's immunity in actions in tort and authorizes any administrative official to use public funds to settle potential claims of governmental liability. The court is unpersuaded by this argument and finds such an

interpretation of chapter 6 to be without support and contrary to the plain language and clear intention of the statute.

Guam's Government Claims Act applies to all causes of action brought against the Territory of Guam and specifically GMH. 5 Guam Code Ann. § 6102 (2008). Furthermore, the Government Claims Act requires that a claim be filed prior to any waiver of immunity. 5 Guam Code Ann. §§ 6106(b), 6108 (2008). Section 6108 of the Government Claims Act provides,

> This Chapter shall apply to all pending litigation in the courts of Guam, or which are on appeal, which were commenced without first filing an administrative claim as would be required by this Chapter had it applied at the time the suit was filed. If such pending litigation was timely filed under the laws existing at the time of filing, the plaintiffs may, notwithstanding § 6106 of this Chapter, file a claim under this Chapter, but such claims shall not be filed later than June 30, 1984, or not later than six months after the effective date of this Chapter, whichever is later.

5 Guam Code Ann. § 6108 (2008).

Section 6106(b) of the same act provides,

> (b) Every action filed under this Chapter shall be barred unless commenced within 18 months from the time the notice that the claim was rejected was served as provided in Article 2 of this Chapter, or within 24 months after the claim was filed in cases where the government does not reject the claim.

*Id.* at § 6106(b).

When taking into account Guam's sovereign immunity and the Claims Act's limited waiver of it, the meaning, scope and intent of these statues is not ambiguous. 48 U.S.C.A § 1421a (2008). They clarify that the Act's waiver of immunity does not apply to a claimant who has not filed a government claim just as it would retroactively apply one who had not filed a claim but whose law suit was pending. 5 Guam Code Ann. §6108.

At the time the above payments were made, Section 6206 provided

> (a) The Attorney General, subject to the approval of the Governor for settlements of over $3,000.00 may settle for money damages any claim against

a line agency or autonomous agency under this Chapter.

(b) In the case of autonomous agencies the Claims Officer, subject to the approval of the Board, the Attorney General and the Governor, or if there be no board, the highest official of such agency, the Attorney General and the Governor for settlements of over $3,000.00, may settle for money damages any claim filed against said agency under this Chapter.

5 Guam Code Ann. §6206 (2000).

In addition the Supreme Court has repeatedly found that when interpreting a legislative act and the statute, " . . . includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Dean v. U.S.*, 129 S.Ct. 1849, 1854 (2009).

Section 6206 identifies specifically those people authorized to settle a suit against the government of Guam once a claim has been filed. 5 Guam Code Ann. §6206 (2008). They are the Attorney General or the Claims Officer of an autonomous agency. *Id.* The Claims Act's limited waiver of immunity is plainly subject to two requirements prior to any authorized settlement: 1) the filing of a government claim and 2) the authority to settle a claim; is specifically limited to two persons. Absent these conditions being met, governmental immunity has not been waived and a payment of Government funds, to settle a claim, not authorized.

In this case the Plaintiff presented credible evidence that a claim was never filed and that the settlement payments were directed and authorized by someone other than those identified by Section 6206. Furthermore, they were not approved by acting Attorney General Kono. Defendants have failed to assert or evince any evidence that a claims officer for GMH was ever appointed or designated for GMH. Absent such the only person authorized to direct approval of a settlement payment is the Attorney General of Guam. In this case the amount of the payment decided upon and directed by Defendant Gutierrez, was

without legislative authority and contrary to the provisions of the Organic Act of Guam.

## III. Third Cause of Action

Plaintiff's third cause of action arises out of Paragraph 25 of its complaint. *Compl. At 6.* It provides,

> GMHA standard operating procedures . . . mandates that a claim be submitted *prior* to any payment of government funds to a claimant, and that the GMHA Claims officer review said claim. In this case, on information and belief, Dr. Batoyan never provided or filed a claim, or initiated any legal action against GMHA justifying the payment of the $300,000.00. Additionally, on information and belief, GMHA's Claim Officer did *not* review nor approve the settlement of the claim, as required by law. As a result, on information and belief, Defendants Gutierrez, Lujan . . . never received no required the requisite claim form, and no GMHA Claims Officer reviewed the propriety of the $300,000.00 payment by GMHA, in violation of GMHA standard operating procedure and Guam Law.

*Id.* Outside of the proscriptions of the Guam's Government Claims Act and Guam's sovereign immunity, Plaintiff introduced no evidence that GMH's standard operating procedure required that a GMH claims officer review all claims prior to settlement. Absent any evidence the court is unable to analyze or review the merits of this allegation. Plaintiff's third cause of action is therefore dismissed.

## IV. Fourth Cause of Action

Plaintiff's fourth cause of action asserts that, "[o]n information and belief, prior to Defendants Gutierrez [and] Lujan . . . ratifying and authorizing the $300,000.00 payment to Dr. Batoyan, Defendants . . . violated the Government Claims Act by failing to receive the approval of the GMHA Claims Officer (5 G.C.A § 6206 (b)) . . ." *Compl.* at 7. Strictly construed, the plain language of Section 6206 of the Government Claims Act did not require the GMH hospital administrator or Governor of Guam to obtain the "approval of the Claims Officer" 5 Guam Code Ann. §6206(b); *Id.* Rather the Claims Officer of an autonomous agency was required to obtain the approval of the Board, Attorney General, and the

Governor, prior to settlement. *Id.*; *Dean v. U.S.*, 129 S.Ct. 1849, 1854 (2009)(when a statute includes particular language in one section but omits it in another it is generally presumed that the legislature acts intentionally and purposely in the disparate inclusion or exclusion). Plaintiff's fourth cause of action is therefore dismissed.

## CONCLUSION

For the above reasons and pursuant to the mandates of Sections 7102 and 7103 of the Guam Code. Plaintiff's are entitled to a personal judgment against Defendant Gutierrez for $300,000.00 and Defendant Lujan for $100,000.00, for a total judgment of $300,000.00 to be paid to the Government Guam as of the date of this order. Defendant Lujan and Defendant Gutierrez are jointly and severally liable for $100,000.00 of the $300,000.00 judgment. Plaintiff's shall prepare and file a judgment, which has been approved as to form by Defendants, within the next 14 days.

**SO ORDERED**, this June 4th, 2008.

_____
Richard H. Benson
Judge *Pro Tempore*, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagatna, Guam.

JUN 0 4 2009

Esther L.G. Pinaula
Deputy Clerk, Superior Court of Guam